**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| VERTO MEDICAL SOLUTIONS, LLC, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 4:19-cv-01532 |
| v. | ) |
| | ) |
| ALLIED WORLD SPECIALTY INS. CO., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS**

Defendant Allied World Specialty Insurance Company ("Allied World"), pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 7-4.01, submits this Memorandum of Law in Support of its Motion to Dismiss all claims herein, and further states:

**NATURE OF THE CASE AND SUMMARY OF ARGUMENT**

Plaintiffs, insured by a directors and officers insurance policy issued by Allied World, file this action for breach of contract and vexatious refusal, contending that Allied World owes them a defense and indemnity with respect to a lawsuit that was filed in Iowa against plaintiff Seth Burgett. Plaintiffs fail to state a claim because the insurance policy does not provide coverage for the Iowa suit. The allegations of the Iowa suit, as well as plaintiff Seth Burgett's own admissions in a declaratory judgment action that he filed in this Court with respect to the Iowa suit, plainly demonstrate that the underlying suit for which plaintiffs seek defense and indemnity is "based upon, arising from, or in consequence of" a written agreement between Seth Burgett and the Iowa plaintiffs, and thus is excluded from coverage by the plain terms of the Allied World insurance policy.

## STANDARD OF REVIEW

Rule 12(b)(6) provides that a motion to dismiss must be granted for "failure to state a claim upon which relief can be granted." "The purpose of the rule is to allow the court to eliminate actions that are fatally flawed in their legal premise and destined to fail, and thus spare the litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993); *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001); *Beckermann v. Babich*, No. 1:16-cv-105-SNLJ, 2017 U.S. Dist. LEXIS 23690, at *10 (E.D. Mo. Feb. 21, 2017).

## ARGUMENT AND ANALYSIS

I. **PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT.**

   A. **ALLIED WORLD MAY ATTACH THE OPERATIVE UNDERLYING DOCUMENTS WITHOUT CONVERTING THIS MOTION TO ONE FOR SUMMARY JUDGMENT.**

Plaintiffs allege that Allied World has breached the terms of a directors and officers liability insurance policy, but plaintiffs failed to attach the insurance policy to their petition against Allied World. However, because the claims herein arise out of this operative document, Allied World may attach it without converting this motion to dismiss to a motion for summary judgment. The majority rule is that, if a plaintiff does not attach a document to its petition, but the document is central to the plaintiff's claim, a defendant may submit an authentic copy to the court to be considered on a motion to dismiss without converting the motion to one for summary judgment. *See, e.g., Noble Sys. Corp. v. Alorica Central, LLC*, 543 F.3d 978, 982 (8th Cir. 2008); *Jordan v. Aetna Life Ins. Co.*, No. 4:11 CV 635 DDN, 2012 WL 274693, at *3 n.4 (E.D. Mo. Jan. 31, 2012); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381 (10th Cir. 1997); *Romani v. Shearson Lehman*

*Hutton*, 929 F.2d 875, 879 n.3 (1st Cir. 1991); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

Plaintiffs allege that "Defendant Allied World wrote, sold and bound coverage to Plaintiffs with a ForceField Private Company Management Liability Package Policy, Policy #0309-9667, providing director and officer liability insurance on or about January 13, 2016." Petition, Exhibit 1, ¶ 6. Plaintiffs' claims are predicated upon the alleged breach of this insurance policy. *See id.* at ¶¶ 20-22, 25-27, 30, and 37. Plaintiffs in fact quote from the language of the policy in pleading their purported claims. *See id.* Accordingly, the Allied World insurance policy attached hereto as Exhibit 2 is properly attached to this motion without raising matters extraneous to plaintiffs' petition.

Similarly, plaintiffs' claims arise out of their assertion that Allied World wrongfully refused to defend an Iowa lawsuit filed by certain members of Verto Medical Solutions, LLC ("Verto"). *See* Petition, Ex. 1, ¶¶ 14-18, 22-25, 31, and 34-36. The claims in that action are essential to plaintiffs' contention that the insurance policy required a defense with respect to that lawsuit. This Court may take judicial notice of publicly-filed legal pleadings. *See* Fed. R. Evid. 201 and 803(8); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). Because plaintiffs' claims herein are that Allied World should have defended the Iowa suit, the petition in the Iowa suit is properly attached hereto as Exhibit 3 without raising matters extraneous to plaintiffs' petition.

Finally, plaintiff Seth Burgett in 2016 filed a complaint for declaratory judgment in this Court, case no. 4:16-cv-00622-AGF, seeking to place the forum for his dispute with the Verto shareholders in Missouri. *See* Burgett Complaint, Exhibit 4. In that complaint, Burgett characterized the nature of the Iowa claims. *See id.* This Court may take judicial

3

notice of Burgett's complaint.  *See* Fed. R. Evid. 201, 801(d)(2), and 803(8); *Porous Media*, 186 F.3d at 1079.  Plaintiff Burgett's admissions regarding the Iowa suit at issue in this action do not raise matters extraneous to plaintiffs' petition.

      **B.**      **THE ALLEGATIONS IN AND REGARDING THE IOWA ACTION.**

Sixty persons who owned "membership units" in Verto filed a petition in the District Court of Polk County, Iowa against Seth Burgett.  *See* Iowa Petition, Ex. 3.  The Iowa suit alleged that Verto did business as Yurbuds, and was founded by Seth Burgett.  *Id.* at ¶ 61.  "Burgett was the promoter of Yurbuds and served as the President and Chief Executive Officer of Yurbuds from its formation until the present time."  Iowa Petition, Ex. 3, ¶ 63.  "Between the middle of 2015 and April of 2016, the Yurbuds board of directors included three members: Burgett along with two non-management directors, Jason Hellickson ('Hellickson') and Ron King ('King')."  *Id.* at ¶ 65.  Hellickson and King were plaintiffs in the Iowa action.  *Id.* at ¶¶ 11, 57.  In 2014, Yurbuds agreed to sell all of its assets to Harman International Industries, Inc. ("Harman").  *Id.* at ¶¶ 66-67.

"In August 2014, Burgett entered into a series of written agreements with the Plaintiffs by which Burgett agreed to pay a portion of certain proceeds he personally received from the Harman Sale Transaction to these Yurbuds members (the 'Re-allocation Agreements')."  Iowa Petition, Ex. 3, ¶ 75.  Burgett subsequently became an employee of Harman and was later terminated, leading to his assertion of a purported employment law claim against Harman.  *Id.* at ¶¶ 73-85.  Burgett negotiated a settlement with Harman on behalf of himself, with respect to his employment claims, and on behalf of Yurbuds.  *Id.* at ¶¶ 86-90.  Burgett distributed $1.6 million of the settlement funds to himself and to another member.  *Id.* at ¶ 93.  The Iowa suit alleged that Burgett "refused to re-allocate any of the remaining Harman proceeds [to the members] pursuant to the

4

Re-allocation Agreements." *Id.* at ¶ 99. Indeed, the factual allegations underlying the Iowa plaintiffs' claims for breach of fiduciary duty are identical to those for their claim for breach of contract. *See* Iowa Petition, Ex. 3, ¶¶ 109, 113. The damages sought by the Iowa plaintiffs for the tort claims are the same as for the breach of contract claims. *See generally* Ex. 3.

In his declaratory judgment complaint filed in this Court, Burgett alleged that "Burgett and Defendants are parties to a certain agreements entitled 'Re-allocation of Proceeds of Earn-Out Amount Received by Seth Burgett' dated August 25, 2014 (hereinafter the 'Reallocation Agreements.')" Burgett Complaint, Ex. 4, ¶ 3. Burgett characterized the impetus for the filing of the Iowa suit as follows:

> On April 7, 2016, Douglas Vander Weide, a Verto shareholder, sent a letter to other Verto shareholders describing the Verto settlement. . . . In that letter, Vander Weide contended that the settlement proceeds paid to Verto by Harman constitute earn-out which, under Sections 1 and 2 of the Reallocation Agreements, would be required to be distributed to Defendants, and others with similar reallocation letters, before Burgett would take any additional monies. The letter further stated that if Burgett failed to designate his entire settlement amount as earn-out, legal action would be pursued.

Burgett Complaint, Ex. 4, ¶ 17. Burgett contends that "[t]he Reallocation Agreements also make clear that holdback monies are excluded from redistribution. A reasonable interpretation of the operative documents demonstrates that the settlement proceeds paid were not earn-out and thus, were not subject to reallocation." *Id.* at ¶ 18.

Burgett's declaratory judgment action was expressly based upon a dispute arising out of the Reallocation Agreements. "A controversy exists regarding the Reallocation Agreements with Defendants, as they relate to the settlement proceeds paid by Harman." Burgett Complaint, Ex. 4, ¶ 21.

5

> Defendants, through Vander Weide, contend that the settlement proceeds paid by Harman to Burgett constitute earn-out which, under Sections 1 and 2 of the Reallocation Agreements, would be required to be distributed to Defendants and others with similar reallocation letters, before Burgett would take any additional earn-out sums. Burgett contends that the settlement proceeds do not constitute earn-out under the terms of the operative agreements and are therefore exempt from the Reallocation Agreement.

*Id.*

Burgett asserted that "there is a fundamental disagreement over the meaning of the operative terms of the Reallocation Agreement." Burgett Complaint, Ex. 4, ¶ 22. "The dispute involves substantial legal principles of ***contract interpretation***, as well as the parties' ***relative rights and contractual duties***, which require the Court's intervention." *Id.* at ¶ 23 (emphasis added).

### C. THE INSURANCE POLICY UNAMBIGUOUSLY EXCLUDES COVERAGE FOR THE IOWA SUIT.

Endorsement No. 11 to the Allied World policy provides that:

> Directors and Officers Liability Coverage Section
>
> . . .
>
> III. EXCLUSIONS
>
> This Coverage Section shall not cover any **Loss** in connection with any **Claim**:
>
> . . .
>
> D. based upon, arising from, or in consequence of any actual or alleged liability of any **Insured** under any express contract or agreement. . .

Policy, Ex. 1, at p. AW0020 (the "Contractual Liability Exclusion"). Pursuant to the Policy's definitions,

> M. "Insured" means the Company and any Insured Person.

6

      N. "Insured Person" means any:

          (1) Executive;

          (2) Employee; or

          (3) Outside Entity Insured Person.

      . . .

      I. "Executive" means any:

          (1) past, present or future duly elected or appointed director, officer, trustee, trustee emeritus, governor, management committee member or member of the board of managers of the Company; . . .

Policy, Ex. 1, at p. AW0046-47.

Seth Burgett was sued in the Iowa action in his capacity as the "President and Chief Executive Officer of Yurbuds from its formation until the present time." Iowa Petition, Ex. 3, ¶ 63. Accordingly, Burgett was an "executive" of the company, an "insured person," and thus an "Insured" as defined by the Policy.

Exclusion D of the Policy, the Contractual Liability Exclusion, excludes coverage for "any Loss in connection with any Claim . . . based upon, arising from, or in consequence of any actual or alleged liability of any Insured under any express contract or agreement." It is readily apparent from both the allegations in the Iowa suit and plaintiff Seth Burgett's admissions in his declaratory judgment action filed in this Court that the claims for which plaintiffs seek a defense and indemnity from Allied World are "based upon, arising from, or in consequence of" the actual or alleged liability of Seth Burgett under an express contract or agreement, namely the Reallocation Agreements. Burgett has admitted that the dispute with the Iowa plaintiffs arises out of "a fundamental disagreement over the meaning of the operative terms of the Reallocation Agreement."

7

Burgett Complaint, Ex. 4, ¶ 22. Burgett admitted that his dispute with the Iowa plaintiffs "involves substantial legal principles of contract interpretation, as well as the parties' relative rights and contractual duties." *Id.* at ¶ 23.

Plaintiffs are expected to argue that the Contractual Liability exclusion does not apply to exclude coverage, because the Iowa plaintiffs asserted tort claims in addition to breach of contract claims against Burgett. However, the Eighth Circuit, applying Missouri law and affirming a decision of this Court, held that it would follow the "majority rule and interpret the phrase 'arising from' broadly, similar to the broad interpretation given to the phrase 'arising out of.'" *Spirtas Co. v. Fed. Ins. Co.*, 521 F.3d 833, 837 (8th Cir. 2008); *see also Spirtas Co. v. Fed. Ins. Co.*, 481 F. Supp. 2d 993 (E.D. Mo. 2007). As here, *Spirtas* involved the interpretation of a directors and officers ("D&O") liability insurance contract. *Id.* at 834. The D&O liability policy in *Spirtas* contained an exclusion "for claims 'based upon, arising from, or in consequence of any actual or alleged liability . . . under any written or oral contract or agreement.'" *Id.* This language is functionally identical to the language at issue in the Allied World policy.

In *Spirtas*, the underlying dispute for which the insured sought defense and indemnity arose out of a contract, but the lawsuit filed against the insured included both breach of contract claims and tort claims. *Spirtas*, 521 F.3d at 835. The same is true here – the Iowa action included claims for fraud, breach of fiduciary duties, promissory estoppel, unjust enrichment and conversion. *See generally* Iowa Petition, Ex. 3. The Eighth Circuit in *Spirtas* found that the causes of action in that suit "all arose from the contractual relationship between the parties and flowed from Spirtas's alleged breach of the subcontract, and thus the D&O policies' contract exclusions applied notwithstanding

8

the fact some of [plaintiff's] counts sounded in tort rather than in contract." 521 F.3d at 836. Here, the Iowa plaintiffs' claims against Burgett are based upon his alleged violations of the Reallocation Agreement. *See* Iowa Petition, Ex. 3, ¶¶ 111, 118, 123, and 126. The Iowa plaintiffs do not allege any claim against Burgett that does not have its origin in his supposed obligation to pay them additional sums out of the settlement with Harman pursuant to the Reallocation Agreement. *See generally* Iowa Petition, Ex. 3.

Plaintiffs allege that Allied World breached its duty to defend and indemnify Burgett with respect to the Iowa suit. Petition, Ex. 1, ¶ 25. "The insurer's duty to defend, though broader than its duty to indemnify, arises only when 'there is a potential or possible liability to pay based on the facts at the outset of the case.'" *Allen v. Cont'l Western Ins. Co.*, 436 S.W.3d 548, 552 (Mo. 2014) (quotation omitted). "In determining whether an insurer has a duty to defend, the Court first compares the policy language with the allegations in the petition from the underlying lawsuit." *Id.* "If there is no potential for coverage based on those facts, then the insurer has no duty to defend." *Id.* at 553. There is no coverage here by virtue of Exclusion D in Endorsement No. 11, the Contractual Liability Exclusion.

Furthermore, the Policy provides that "[t]his Coverage Section shall not cover any **Loss** in connection with any **Claim**" that is excluded by Exclusion D, as amended by Endorsement No. 11. *See* Policy, "III. Exclusions," Ex. 2, at AW0049-50; AW0020. "Loss" is defined by the policy to mean, in pertinent part, "defense costs." Policy, Ex. 2, at AW0047. Accordingly, the policy excludes defense costs associated with excluded causes of loss; in this case, claims "based upon, arising from, or in consequence of" contracts, namely, the Reallocation Agreements. The damages that plaintiffs seek to recover herein, namely the costs and fees incurred by plaintiffs in defending the Iowa suit,

9

would be "defense costs" as defined by the policy if they were not expressly excluded from coverage. *See* Policy, Ex. 2, at AW045. Accordingly, what plaintiffs seek to recover herein is an excluded "loss" under the policy.

There are other applicable exclusions in the Policy, and Allied World reserves the right to brief these issues on summary judgment if necessary, but if any one exclusion in the Policy applies, coverage is barred without need to address the remaining exclusions. *See, e.g., Unitedhealth Group v. Hiscox Dedicated Corporate Member, Ltd.*, No. 09-CV-0210 (PJS/SRN), 2010 U.S. Dist. LEXIS 10983, at *55 (D. Minn. Feb. 9, 2010); *Joy Tabernacle-The New Testament Church v. State Farm Fire & Cas. Co.*, No. 13-cv-11650, 2014 U.S. Dist. LEXIS 105925, at *5 (E.D. Mich. Aug. 1, 2014) ("[cc]overage under an insurance policy is lost if any one exclusion is applicable to the claims at issue"; citations omitted). This Court can determine, based upon publicly-available court records and documents that are properly judicially noticed, that Exclusion D, the Contractual Liability Exclusion, applies and bars plaintiffs' claims without recourse to other information or policy exclusions on this motion to dismiss.

## II. PLAINTIFFS FAIL TO STATE A CLAIM FOR VEXATIOUS REFUSAL.

"[T]he wrongful delay or refusal to pay a first-party insurance claim is simply a breach of contract. Recovery may be enhanced under the vexatious refusal statute, if applicable." *Wells v. Farmers All. Mut. Ins. Co.*, No. 2:07CV00036 ERW, 2009 U.S. Dist. LEXIS 37284, at *3 (E.D. Mo. May 4, 2009). The vexatious refusal cause of action affords recovery **in addition to** the damages recoverable for a breach of contract, to allow the insured to be compensated for litigation expenses that are not part of the damages for breach of contract. *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 69 (Mo. 2000); *accord Easter v. Farmers Ins. Co.*, 2014 U.S. Dist. LEXIS 39950, *9 (W.D. Mo. Mar. 26,

2014). The foundation for the vexatious refusal claim, however, is the insurer's breach of contract. *See Overcast*, 11 S.W.3d at 69.

As set forth above, plaintiffs cannot state a claim for breach of contract. Accordingly, plaintiffs fail to state a claim for vexatious refusal. Relief for vexatious refusal under Mo. Rev. Stat. §§ 375.420 & 375.296 only applies where there is "a[n] action against an[] insurance company to recover the amount of any loss under a policy." Mo. Rev. Stat. § 375.420. This is necessarily so because the additional damages available under the statute are calculated as a percentage of "the loss," under the policy. *Id.*; *see also* § 375.296 ("Additional damages for vexatious refusal to pay" are calculated under Section 375.420, and provide a remedy "in addition to the amount due under the provisions of the contract of insurance and interest thereon"). Thus, there must be a viable action for breach of contract in order for vexatious refusal damages to be awarded on top of the breach of contract damages.

Because plaintiffs do not state a claim for breach of contract, as a matter of law they cannot recover for vexatious refusal, which simply provides additional damages on top of breach of contract damages. Plaintiffs' petition should, therefore, be dismissed in its entirety for failure to state a claim upon which relief may be granted.

## CONCLUSION

WHEREFORE, Defendant Allied World Specialty Insurance Company respectfully moves the court to dismiss Plaintiffs' claims herein, and for any and all such further relief as the Court deems just and proper.

Respectfully submitted,

BAKER STERCHI COWDEN & RICE, LLC

 /s/ Angela M. Higgins
Angela M. Higgins     MO #52159
2400 Pershing Road, Suite 500
Kansas City, MO  64108
Telephone:   (816) 471-2121
Facsimile:    (816) 472-0288
higgins@bscr-law.com

and

Martha Charepoo     MO #55641
100 N. Broadway, 21st Floor
St. Louis, Missouri 63102
T:  (314) 345-5000
F:  (314) 345-5055
mcharepoo@bscr-law.com

**ATTORNEYS FOR DEFENDANT
ALLIED WORLD SPECIALTY INSURANCE
COMPANY**

## CERTIFICATE OF SERVICE

    I hereby certify that on this 6th day of June, 2019, a copy of the foregoing was served by filing the same with the Clerk of Court using the CM/ECF system, which will give notice of the filing to the following counsel of record:

Morry S. Cole
GRAY, RITTER & GRAHAM, P.C.
701 Market Street, Suite 800
St. Louis, MO 63101-1826
**ATTORNEY FOR PLAINTIFFS**

               /s/  Angela M. Higgins