UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VERTO MEDICAL SOLUTIONS, LLC and SETH BURGETT, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case No. 4:19-CV-01532-NCC ) |
| ALLIED WORLD SPECIALTY INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Allied World Specialty Insurance Company's ("Allied World") Motion to Dismiss (Doc. 8). The Motion is fully briefed and ready for disposition. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 14). For the following reasons, Allied World's Motion will be **GRANTED**.

### I. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted." To survive a motion to dismiss a complaint must show "'that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "[O]nly a complaint that states a

plausible claim for relief survives a motion to dismiss." *Id.* at 679 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. (citation omitted). The pleading standard of Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). All reasonable references from the complaint must be drawn in favor of the nonmoving party. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 1999).

## II. Background[1]

Plaintiff Seth Burgett ("Burgett") is the founder, President and Chief Executive Officer of Plaintiff Verto Medical Solutions, LLC ("Verto") (Doc. 5 at ¶2). Verto manufactured and sold patented sports earphones called "Yurbuds" (Doc. 5 at ¶9). In June 2014, Verto agreed to sell the business and assets of Verto to Harman International Industries, Inc. ("Harman") (the "Harman Sale Transaction") (Doc. 5 at ¶11). In August 2014, Burgett entered into a series of written agreements with several Verto shareholders in which Burgett agreed to pay a portion of certain proceeds he personally received from the Harman Sale Transaction to these Verto members (the "Reallocation Agreements"). Burgett subsequently became an employee of

---

[1] The facts included in the Background section are taken from Plaintiffs' Petition (Doc. 5) as well as the underlying insurance policy and the petition in the Iowa state court case, attached as exhibits to Allied World's memorandum in support of its Motion to Dismiss (Docs. 9-2 & 9-3). While these additional items are matters outside the pleadings, the Court concludes, as the parties concur, that these documents are matters embraced by the pleadings or matters of public record and are therefore properly considered as to a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss (*See* Doc. 9 at 2-4; Doc. 10 at 3 n.1). *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008) (The Court may consider "some public records, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings.")

2

Harman and was later terminated. Burgett negotiated a settlement with Harman on behalf of himself, with respect to his employment claims, and on behalf of Verto (the "Harman Settlement"). Burgett distributed $1.6 million of the settlement funds to himself and one other member.

On January 13, 2016, Defendant Allied World provided Verto director and officer liability insurance with a policy limit of $2,000,000 under a ForceField Private Company Management Liability Package Policy, Policy #0309-9667 (the "Policy") (Doc. 5 at ¶6; Doc. 9-2). The Policy provides that if Verto or its designee tendered the defense of a claim under the Policy, Allied World "shall assume the defense of such claim" (Doc. 5 at ¶¶21, 30(a); Doc. 9-2 at 1, 42). Officers and directors, such as Burgett, are covered for "wrongful acts" which is defined as "any actual or alleged act, error, omission, neglect, breach of duty, breach of trust, misstatement or misleading statement by an Insured Person in his or her capacity as such, or any matter claimed against an insured person by reason of his status as such" (Doc. 5 at ¶30(c); Doc. 9-2 at 49). The provision is subject to several exclusions found in Section III of the Policy titled "Exclusions" (Doc. 9-2 at 49-53). Specifically, Section III states that "This Coverage Section shall not cover any **Loss** in connection with any **Claim**:" and then lists exclusions in paragraphs A. to P. (*Id.*) (emphasis in original). Attached to the Policy are a series of several endorsements all effective as of 12:01 AM on January 13, 2016, purporting to amend, delete, or otherwise modify the Policy (*See* Doc. 9-2 at 16-31). Relevant to the current motion are Endorsements Nos. 11 and 13.

Endorsement No. 11 to the Policy provides that the Policy is amended by deleting Exclusion D. in its entirety and replacing it with the following: "D. based upon, arising from, or

---

(internal quotation omitted).

3

in consequence of any actual or alleged liability of any **Insured** under any express contract or agreement . . ." (Doc. 9-2 at 20) (emphasis in original). Endorsement No. 13 to the Policy provides that the Policy is amended as follows:

> 3. Section III., Exclusions A., B., C. and D. (including the paragraph immediately following paragraph C.) are deleted in their entirety and replaced with the following:
>
> A. arising out of, based upon or attributable to the gaining of any profit or financial advantage or improper or illegal remuneration by an **Insured**, if a final judgment or adjudication in the underlying action establishes that such **Insured** was not legally entitled to such profit or advantage or that such remuneration was improper or illegal;
>
> B. arising out of, based upon or attributable to any deliberate criminal or deliberate fraudulent act or any willful violation of law by an **Insured**, if a final judgment or adjudication in the underlying action establishes that such act or violation occurred;
>
> C. arising out of, based upon or attributable to the purchase or sale by an **Insured** of securities of the **Company** within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and any amendments thereto or similar provisions of any state statutory law if a final judgment or adjudication in the underlying action establishes that such violation occurred[.]

(Doc. 9-2 at 23) (emphasis in original).

On July 11, 2016, sixty individuals who were investors and owned "membership units" in Verto (hereinafter the "Iowa plaintiffs") filed a six-count petition in the District Court of Polk County, Iowa against Burgett asserting that the Harman Settlement proceeds paid to Burgett constituted an earn-out under the Reallocation Agreements and thus should be properly distributed to the Iowa plaintiffs (the "Iowa lawsuit") (Doc. 9-3). *See Vander Weide v. Burgett*, LACL135549 (Dis. Ct. Polk Cnty. Iowa 2016). In Count I, the Iowa plaintiffs raised a claim of fraud alleging Burgett made "material misrepresentations" upon which they reasonably relied in agreeing to the Harman Settlement (Doc. 9-3 at ¶¶103-108). Specifically, the Iowa plaintiffs asserted that Burgett made "material misrepresentations" including, but not limited to: his "intention to make the Yurbuds investors whole with the proceeds of the Harman settlement;"

"Burgett's agreement to re-allocate proceeds received from Harman pursuant to the Re-allocation Agreements;" and "Burgett's representations and promises not to take any funds from the Harman settlement related to his employment claims against Harman" (*Id.* at ¶104). In Count II, the Iowa plaintiffs brought a claim of breach of fiduciary duties alleging that Burgett, "by virtue of this status as a board member and president of the company," owed Yurbuds and the Iowa plaintiffs fiduciary duties of loyalty, candor, and care that he breached when (1) he distributed the Harman Settlement proceeds to himself and other members of the Yurbuds management team without approval from the board and prior to any distributions to the other Yurbuds members and when (2) he claimed that the entire amount fell outside the category of funds covered in the Reallocation Agreements, "in violation of his prior promises and commitments" (*Id.* at ¶¶109-112). In Count III, the Iowa plaintiffs asserted a claim of breach of contract based on the alleged breach of Reallocation Agreements when Burgett did not distribute the Harman Settlement proceeds to the Iowa plaintiffs (*Id.* at ¶¶113-116). In Count IV, the Iowa plaintiffs brought a claim for promissory estoppel and argued that the parties had "a clear and definite agreement" that certain funds received by Burgett from Harman were subject to reallocation to the Iowa plaintiffs and the Iowa plaintiffs were damaged by Burgett's failure to abide by that agreement (*Id.* at ¶¶117-120). In Count V, the Iowa plaintiffs raised a claim for unjust enrichment alleging that Burgett was unjustly enriched by the receipt of the Harman Settlement proceeds at the expense and to the detriment of the Iowa plaintiffs (*Id.* at ¶¶121-124). In Count VI, the Iowa plaintiffs asserted a claim of conversion and argued that Burgett wrongfully converted the Harman Settlement funds when he refused to pay these funds to the Iowa plaintiffs pursuant Burgett's "promise and agreement to reallocate" certain funds to the Iowa plaintiffs (*Id.* at ¶¶125-130). The trial court entered a directed verdict for Burgett on all

5

claims and dismissed the case. At the time of filing the current action, the Iowa lawsuit was on appeal and a decision had not yet been rendered. It is undisputed that Plaintiffs provided notice and tender of the action, including prior to and at various stages of the lawsuit, and that Allied World denied defense and indemnity (Doc. 5 at ¶¶12-13, 15, 18).

On May 5, 2016, prior to the filing of the Iowa lawsuit, Burgett filed a "Complaint for Declaratory Relief" against the two Iowa plaintiffs and Does 1 through 100 (the "Declaratory Judgment Action") (Doc. 9-4). *Burgett v. Hellickson, et al.*, Case No. 4:16-CV-622-AGF (E.D. Mo.). In the complaint, Burgett alleged, "A controversy exists regarding the Reallocation Agreements with Defendants, as they relate to the settlement proceeds paid by Harman" (Doc. 9-4 at 6). Burgett indicated that "[t]he dispute involves substantial legal priciples of contract interpretation" and sought declarations regarding the parties' respective rights and contractual duties under the Reallocation Agreements (*Id.* at 7). On December 14, 2016, the Declaratory Judgment Action was stayed pending resolution of the Iowa lawsuit. The Court will address the parties' dispute whether the Court may address these prior representations to the Court in its analysis section below.

On April 24, 2019, Plaintiffs filed this action against Allied World in the Circuit Court of St. Louis County, Missouri for breach of contract (Count I) and Vexatious Refusal to Pay (Count II) (Doc. 5). Plaintiffs generally assert that Allied World wrongfully refused to defend Verto in the Iowa lawsuit (*Id.*). On May 30, 2019, Allied World timely removed the matter to this Court (Doc. 1). On June 6, 2019, Defendant Allied World filed its Motion to Dismiss (Doc. 8). Allied World asserts that Plaintiffs fail to state a claim for breach of contract because the insurance policy unambiguously excludes coverage for the Iowa lawsuit (Doc. 9). Allied World further asserts that Plaintiffs fail to state a claim for vexatious refusal to pay because Plaintiffs cannot

state a claim for breach of contract and a vexatious refusal to pay claim cannot be a stand-alone claim (*Id.*).

### III. Analysis

**A. Matters Outside the Pleadings**

As a preliminary matter, the Court must determine whether the complaint filed in the federal Declaratory Judgment Action, attached as an exhibit to Allied World's memorandum in support of its motion, may be properly considered in resolving this Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). In reviewing a motion to dismiss, courts must generally ignore materials outside the pleadings but may consider "the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quoted case omitted); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). "Matters outside the pleadings" include any written evidence "in support of or in opposition to the pleading that provide[s] some substantiation for and does not merely reiterate what is said in the pleadings." *McAuley v. Federal Ins. Co.*, 500 F.3d 784, 787 (8th Cir. 2007) (quoted case omitted). In this case, the complaint in the Declaratory Judgment Action is a matter of public record and the Court may properly consider it in deciding the Motion to Dismiss. *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records"). *See also Hart v. Comm'r*, 730 F.2d 1206, 1208 (8th Cir. 1984) (per curiam) ("[F]ederal courts may *sua sponte* take judicial notice of proceedings in other courts if they relate directly to matters at issue."); *Williams v. Roper*, No. 4:13-CV-2440 CAS, 2016 WL 4368097, at *3 (E.D. Mo. Aug. 16, 2016) ("The Court further notes that it may take judicial notice of the docket entries and filings from state court and this District."); *Rodriguez v. Lawns*

*of Distinction*, No. 4:07-MC-447 CAS, 2008 WL 4941000, at *1 n.1 (E.D. Mo. Nov. 17, 2008) (taking judicial notice of records, including the complaint, in an action from the Southern District of Texas). Thus, the Court could consider the complaint in the Declaratory Judgment Action when addressing the parties' arguments on the Motion to Dismiss. Furthermore, "allegations in pleadings 'are in the nature of judicial admissions binding upon the parties, unless withdrawn or amended.'" *Phusion Projects, LLC v. M.K. Distributors, Inc.*, No. 5:12CV0413 KGB, 2013 WL 1947611, at *3 (E.D. Ark. May 10, 2013) (quoting *Missouri Housing Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990)). *See also L.L. Nelson Enterprises, Inc. v. Cty. of St. Louis, Mo.*, 673 F.3d 799, 806 (8th Cir. 2012) ("Allegations in a complaint are binding admissions."). In this instance, the Court will, however, not rely upon the prior characterizations made by Burgett in the Declaratory Judgment Action. While the characterizations undoubtedly indicate that the underlying dispute between Burgett and two of the Iowa plaintiffs as well as several Doe defendants rests in contract and the action is clearly related to the subsequent Iowa lawsuit, as addressed in more detail below, these representations are not necessary in the Court's determination of the instant matter.

**B. Breach of Contract**

In its Motion to Dismiss, Allied World asserts that Plaintiffs fail to state a claim for breach of contract because the insurance policy unambiguously excludes coverage for the Iowa lawsuit (Doc. 9). "State law governs the interpretation of insurance policies." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc.*, 346 F.3d 1160, 1164 (8th Cir. 2003) (quoting *Capitol Indem. Corp. v. Haverfield*, 218 F.3d 872, 875 (8th Cir. 2000)). Under Missouri Law, "[t]he insurer's duty to defend, though broader than its duty to indemnify, arises only when 'there is a potential or possible liability to pay based on the facts at the outset of the case.'" *Allen v. Cont'l*

*Western Ins. Co.*, 436 S.W.3d 548, 552 (Mo. 2014) (quotation omitted). "In determining whether an insurer has a duty to defend, the Court first compares the policy language with the allegations in the petition from the underlying lawsuit." *Id.* "If there is no potential for coverage based on those facts, then the insurer has no duty to defend." *Id.* at 553.

### 1. Validity of Endorsement No. 11

First, the Court must determine whether Endorsement No. 11 is a valid and enforceable contract provision of the Policy. Plaintiffs assert that Endorsement No. 11 was not a valid or enforceable provision of the Policy because it was amended and superseded by Endorsement No. 13 (Doc. 10 at 9). Alternatively, Plaintiffs argue that Endorsement No. 11 and Endorsement No. 13 create an ambiguity that should be construed against Allied World (Doc. 16 at 3). Indeed, Endorsement No. 11 and Endorsement No. 13 both purport to delete Exclusion D. in Section III (Doc. 9-2 at 20, 22). Endorsement No. 11 also includes a new Exclusion D., the exclusion at issue in the current action (*Id.* at 20). Plaintiffs assert that because Endorsement No. 13, several pages after Endorsement No. 11, includes a provision deleting Exclusion D., the new Exclusion D. created by Endorsement No. 11 is deleted by Endorsement No. 13. However, such a reading of the Policy would render Endorsement No. 11 null and void and the Missouri courts "prefer[] a contract construction that gives meaning to all provisions of an instrument to a construction that leaves a portion of the writing useless and inexplicable." *See Martin v. U.S. Fid. & Guar. Co.*, 996 S.W.2d 506, 511 (Mo. 1999). When interpreting a contract, "[e]ach provision is construed in harmony with the others to give each provision a reasonable meaning and avoid an interpretation that renders some provisions useless or redundant." *Wildflower Cmty. Ass'n, Inc. v. Rinderknecht,* 25 S.W.3d 530, 534 (Mo. Ct. App. 2000). Furthermore, Plaintiffs' interpretation presumes that Endorsement No. 13 applies to Endorsement No. 11. Endorsements

9

serve to alter and modify the terms and conditions of a policy. *Grable v. Atlantic Cas. Ins. Co.*, 280 S.W.3d 104, 108 (Mo. Ct. App. 2009). Endorsement No. 11 and Endorsement No. 13 were both issued with the Policy and have the same effective time and date. When read in the context of the Policy as a whole, considering the timing the effectiveness of the endorsements and giving all clauses in the insurance contract meaning, it is clear that the intent of the parties was not to delete the new Exclusion D. created in Endorsement No. 11 but, rather, to delete Exclusion D. in Section III of the standard policy. Thus, no ambiguity exists and the Court should not permit a strained interpretation in an attempt to insert one. Endorsement No. 11 is accordingly a valid and enforceable provision of the Policy.

### 2. Applicability of Endorsement No. 11

Having determined that Endorsement No. 11 is a valid and enforceable provision of the Policy, the Court turns to whether the Iowa lawsuit falls into the operative Exception D. created by Endorsement No. 11. "Under Missouri rules of construction, the language in an insurance contract is given its plain meaning if the language is plain and unambiguous." *Becker Metals Corp. v. Transp. Ins. Co.*, 802 F.Supp. 235, 239 (E.D. Mo. 1992) (citing *Dieckman v. Moran*, 414 S.W.2d 320, 321 (Mo. 1967)). Endorsement No. 11 deletes Exclusion D. in Section III of the standard policy and creates a new Exclusion D. which excludes coverage for any claims "based upon, arising from, or in consequence of . . . any express contract or agreement[.]" (Doc. 9-2 at 20).

The Court finds that the exclusion at issue here applies to Plaintiffs' claim for coverage. As a preliminary matter, for the first time in their sur-reply Plaintiffs assert that not all of the Iowa plaintiffs signed the Reallocation Agreements (Doc. 16 at 1-2). In doing so, Plaintiffs point to paragraph 76 of the Iowa lawsuit which states, "The terms of the Re-allocation Agreements

are substantially similar among all of the Yurbuds members who signed the agreements" (Doc. 9-3 at ¶76). Elsewhere in the Iowa lawsuit, the Iowa plaintiffs clarify that they are all signatories to the Reallocation Agreements. For example, just a paragraph prior to the one cited by Plaintiffs, the Iowa plaintiffs state, "In August 2014, Burgett entered into a series of written agreements with the Plaintiffs by which Burgett agreed to pay a portion of certain proceeds he personally received from the Harman Sale Transaction to these Yurbuds members (the "Re-allocation Agreements"). Many of the Re-allocation Agreements with the Plaintiffs were negotiated and entered into in Iowa" (Doc. 9-3 at ¶75). *See also, e.g.,* Doc. 9-3 at ¶114 ("The Re-allocation Agreements between the Plaintiffs and Burgett . . . constitute valid and binding written contracts between Plaintiffs and Burgett."). When taken in context, while perhaps inartfully worded, paragraph 76 stands for the proposition that the Reallocation Agreements are substantially similar in form and content not that certain Iowa plaintiffs were not signatories to the agreements.

Plaintiffs also assert that of the six claims raised in the Iowa lawsuit, at least two—Breach of Fiduciary Duty and Fraud—asserted tortious conduct that arose separate from and independent of any contractual undertakings (Doc. 10 at 7). Plaintiffs further assert that one of the other counts in the Iowa lawsuit—Unjust Enrichment—alleged a legal theory and sought a remedy only available in the absence of an express contract (*Id.*).[2] Applying Missouri law, the Eighth Circuit held that it would follow the "majority rule and interpret the phrase 'arising from' broadly, similar to the broad interpretation given to the phrase 'arising out of.'" *Spirtas Co. v. Fed. Ins. Co.*, 521 F.3d 833, 837 (8th Cir. 2008). As is the case here, *Spirtas* involved the interpretation of a directors and officers ("D&O") liability insurance contract. *Id.* at 834.

---

[2] Plaintiffs apparently concede that the remaining claims raised in the Iowa lawsuit "arise

Similar to the Policy language at issue, the D&O liability policy in *Spirtas* precluded coverage for claims "based upon, arising from, or in consequence of any actual or alleged liability ... under any written or oral contract or agreement, provided that this Exclusion[ ] shall not apply to the extent that an Insured Organization would have been liable in the absence of the contract or agreement." *Id.* at 835. The Eighth Circuit determined that the lawsuit filed against the insured included breach of contract claims and tort claims but that the causes of action "all arose from the contractual relationship between the parties and flowed from Spirtas's alleged breach of the subcontract." *Id.* at 836.

The Iowa plaintiffs do not allege any claim against Burgett that does not have its origin in his alleged breach of the Reallocation Agreements. Although Counts II and III, claims for Fraud and Breach of Fiduciary Duties respectively, sound in tort, they arise from the alleged liability of Burgett under the Reallocation Agreements. On the face of the petition in the Iowa lawsuit, the Burgett's alleged duty to the Iowa plaintiffs, and the resulting alleged harm to them, only arises from the promises and commitments included in the Reallocation Agreements. Even if the Court were to construe Burgett's fiduciary duty to arise from his role as a board member and as president of Verto, the alleged breach of that duty rests on the claimed breach of the Reallocation Agreements. Further, while a claim for unjust enrichment cannot be predicated on an express contract, the claim for unjust enrichment in the Iowa lawsuit relies on the Iowa plaintiffs' theory that they were entitled to the Harman Settlement funds, an entitlement stemming from the Reallocation Agreements. It is clear upon a complete and thorough review of the petition in the Iowa lawsuit that Burgett would not have been liable to the Iowa plaintiffs under any of the Iowa plaintiffs' asserted theories of recovery in the absence of the Reallocation Agreements. *Spirtas*

---

from" the Reallocation Agreements (*See* Doc. 10 at 7; Doc. 16 at 2).

*Co. v. Fed. Ins. Co.*, 481 F. Supp. 2d 993, 997 (E.D. Mo. 2007), aff'd, 521 F.3d 833 (8th Cir. 2008). Therefore, the Plaintiffs' claim for coverage falls within Exclusion D. in Endorsement No. 11 and the Court will grant Allied World's Motion to Dismiss as to Plaintiffs' breach of contract claim.

**C. Vexatious Refusal to Pay**

Finally, Allied World asserts that Plaintiffs fail to state a claim for vexatious refusal to pay because Plaintiffs cannot state a claim for breach of contract and a vexatious refusal to pay claim cannot be a stand-alone claim. Under Missouri's vexatious refusal statute, a court or jury in a case against an insurance company may award damages in addition to the plaintiff's proven loss under the policy "if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse." Mo. Rev. Stat. § 375.420. "A claim of vexatious refusal to pay requires proof (1) of an insurance policy, (2) of the insurer's refusal to pay and (3) that the insurer's refusal was without reasonable cause or excuse." *D.R. Sherry Const., Ltd. v. Am. Family Mut. Ins. Co.*, 316 S.W.3d 899, 907 (Mo. 2010) (en banc) (citing *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 456-57 (Mo. 2006) (en banc)). A party must also plead a claim for breach of contract to establish a claim for vexatious refusal to pay. *Aziz v. Allstate Ins. Co.*, 875 F.3d 865, 869 (8th Cir. 2017) ("Under Missouri law, a vexatious refusal is a derivative of a breach-of-contract claim."); *Thomas Farms, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 1:18CV00196 AGF, 2019 WL 460503 at *3 (E.D. Mo. Feb. 6, 2019) ("[A] claim for vexatious refusal to pay is necessarily predicated on a breach of an insurance policy."). As the Court has determined that Plaintiffs failed to state a claim for breach of contract and a claim for vexatious refusal to pay is necessarily predicated on a breach of an insurance policy,

Plaintiffs' claim for vexatious refusal to pay necessarily also fails. Therefore, the Court will also grant Allied World's Motion to Dismiss as to Plaintiffs' vexatious refusal to pay claim.

## IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Allied World Specialty Insurance Company's Motion to Dismiss (Doc. 8) is **GRANTED** and this matter is **DISMISSED, with prejudice**. A separate order of dismissal will accompany this Order.

**IT IS FURTHER ORDERED** that, in light of the Court's Order, all other remaining pending motions (Docs. 18, 21) are **DENIED, without prejudice, as moot**.

Dated this 4th day of November, 2019.

                                                  /s/ Noelle C. Collins
                                                  NOELLE C. COLLINS
                                                  UNITED STATES MAGISTRATE JUDGE